All right, next case on the docket is People v. Carson, cause number 5-10-113, and it looks like you've scared off the competition, so I guess it's just you, and you may proceed. In this case, the defendant was convicted of aggravated criminal sexual abuse, and on appeal he makes two claims. The People conceded the second claim regarding the implied acquittal, and he also claims that he was not found guilty beyond a reasonable doubt. This court employs the Collins Standard, which looks at the evidence in the light most favorable to the people, a standard that gives deference to credibility determinations that were made by the trier of fact. The defendant makes three attacks on his conviction. First, that the 11-year-old victim's testimony was not corroborated. This is an old standard that has long been rejected. A victim of a sex crime does not have to have substantial corroboration of his or her testimony. Second, he complains that the victim's testimony was not credible because she didn't make an immediate outcry. She didn't tell her mother, she didn't voluntarily come forward with the information to anyone, but was in fact had to be asked a question by her grandfather. This is also not a meritorious argument. Tell me again how old the young lady was. She was 11 at the time. The defendant was around 23, close to 24 in there. The evidence at trial showed that AA, that's the victim, had not lived with her mother for some time, four years in fact. She lived with her grandparents. They had custody of her because of the mother's ongoing drug problems. It wasn't until just a few months before the event occurred that they had begun to permit visitation between AA and her mother. It appeared to them that she was doing better, she was holding down a job, but in fact she hasn't. AA's mother testified at trial that she used cocaine two to three times a week during this time period. So obviously her judgment was impaired during this time. So AA had not lived with her mother for four years and she had just begun to have some visitation. And it was during visitation with the mother that this occurrence happened. AA's mother had left her in the apartment alone with her live-in boyfriend. And AA testified that she was in the bedroom. It's a one-bedroom apartment. AA usually slept on the couch, but she was in the bedroom at this time watching television. After her mother left, she said that the defendant came in and removed her pants and panties and placed his finger in the lips of her vagina. And she testified that she resisted and she screamed. And then after he was finished with her, he took her into the bathroom and she continued to scream. And he told her that if she didn't quit screaming, he was going to kill her. And he also told her that if she told anyone about the occurrence that he would kill her. She testified that she washed up and that the water was running and that she was crying and screaming and was very distraught. She said she washed her body off because she felt really nasty and disgusting. Now, under these circumstances, you know, she didn't tell her grandfather or her grandmother when she got back because she testified that she was afraid that the defendant was going to kill her. She certainly didn't have a reason to tell her mother. Her mother came back shortly after the event and I'll explain why. But she certainly didn't tell her mother. There's no indication that she was close to her mother. She hadn't lived with her for four years. She'd only begun again to have visitation. And she also testified that she didn't think that her mother would believe her anyway if she told her. So the jury had reasons to credit her testimony even though she did not tell her mother immediately. And they had reasons to credit her testimony even though she did not tell anyone until she was asked about it. And that's because she was really afraid the defendant was going to kill her. And she's just 11 years old. To her, that threat seemed believable. The victim, A. A., told the same account. Her account was consistent to anyone that she gave it to. Her testimony was somewhat corroborated by testimony of Kelsey Sutton and Kimberly Sutton. Kelsey Sutton was in the apartment next to Apartment 5 where the defendant assaulted the A. A. And she was in Apartment 6 and the defendant and the child were in Apartment 5. The apartment had very thin walls and the two bathrooms in Apartment 5 and 6 adjoined. And Kelsey Sutton was in the bathroom and she said she heard water burning. She heard a child screaming bloody murder. She heard a little girl crying and screaming. She couldn't hear what was being said because of the running water and the splashing. She could hear occasional small words like no. Then she heard someone leave the bathroom and then she heard more splashing and more screaming and then the little girl was suddenly silent. And this frightened her. So she called her mother, Kimberly Sutton, who was the manager of the apartment complex and Kimberly Sutton showed up at the apartment to find out what was going on. She previously told the defendant he couldn't stay there because he's not on the lease, he's not a guest and he had to leave. But he kept coming back. She had to knock several times to get the door open and when she gets in she finds that the mother is not there. And all she can see is the defendant and the little girl, A. A., who's sitting on the couch and she appears extremely distressed. She appears like she's been crying a long time. She's got the hiccups. She's still crying. She has her hands over her eyes. Her hair is wet and she appears as if she had gotten dressed without toweling off is what Kimberly Sutton said. Now Kimberly Sutton knew the little girl and A. A. usually would come over and greet her or give her a hug but she didn't. She just sat on the couch with her hands over her eyes and this was strange. So Kimberly Sutton called the mother and waited until the mother returned. So the little girl's testimony was corroborated in the fact that shortly after, I mean during some of the occurrence, she was overheard screaming and crying and water splashing and this somewhat corroborates the fact that she washed herself. And also the fact that she's extremely distressed afterwards, just immediately after this and she's observed to be wet. It also corroborates her testimony. Also it corroborates her testimony. She was alone with the defendant in the apartment at the time of the occurrence and that the mother was gone. So to the extent an unwitnessed event can be corroborated, her testimony was corroborated. Now the defendant in what she can tell is also understandable and it doesn't detract from her credibility. The defendant also claims that there's evidence that she was in fact just being disciplined and that she made up this story. For this argument he relies on the testimony of Mona Miller. Her testimony was extremely impeached and extremely incredible. Briscoff, she lived in the apartment building as well but she overheard nothing. And her only knowledge of the event was like second hand and third hand because what she testified about was the conversation that she had with Kimberly Sutton doing what she relates what Kimberly Sutton said about what Kelsey Sutton said about what she overheard. And so you've got hearsay within hearsay and it isn't credible because one, Mona Miller takes about 20 medications and many of them are pain pills. And so she may not have recalled this conversation accurately and may have embellished it in her mind. As well, her testimony about what she thinks Kelsey Sutton said bears no resemblance to Kelsey Sutton's own testimony. Kelsey Sutton said she could not hear any voice except the child's. And Kelsey Sutton testified that she couldn't hear any words except for she couldn't make up any sentences or what was being said because of the running water. She could only hear little words like no. And she certainly didn't testify that she overheard AA saying please don't do that to me. I'm sorry, I will be good. I'm sorry, please don't do that to me. And that she kept repeating. That bears no resemblance. So for that reason, yes. Thank you for your argument. We'll take this matter under advisement.